UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY RICHARD NEUMANN,

    Plaintiff,

v.                                                                      Hon. Sally J. Berens

COMMISSIONER OF SOCIAL SECURITY,         Case No. 1:19-cv-816

    Defendant.
_____/

**OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence and in accordance with the law it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks judicial review of this decision.

For the following reasons, the Court will affirm the Commissioner's decision.

**Standard of Review**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal

standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and his findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Dept. of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## Procedural Posture

Plaintiff filed an application for DIB on October 18, 2013, alleging disability due to multiple sclerosis, depression, and a history of alcohol/substance abuse. Administrative Law Judge (ALJ) Lawrence E. Blatnik held a hearing on April 23, 2015, and issued a written decision

on June 19, 2015, finding Plaintiff not disabled through the date of the decision. (PageID.75–83.) The Appeals Counsel denied Plaintiff's request for review on May 3, 2016. (PageID.88–91.) Plaintiff did not seek further review of the decision.

Plaintiff filed his present applications for DIB and SSI on July 26, 2016, alleging that he became disabled on July 5, 2013, due to multiple sclerosis, cerebellar dysmetria, pyramidal signs, short term memory loss, anxiety, and urinary issues. (PageID.95–96.) Plaintiff later amended his alleged onset date to June 20, 2015. (PageID.231.) Plaintiff was age 37 at the time he filed his applications. (PageID.95.) Plaintiff had a high school education and past work as an auto mechanic. (PageID.82, 235.) After Plaintiff's application was denied (PageID.125), he requested a hearing before an ALJ (PageID.146).

ALJ Paul W. Jones conducted a hearing on June 6, 2018, and received testimony from Plaintiff and Zachary A. Matthews, an impartial vocational expert. (PageID.51–70.) On September 17, 2018, the ALJ issued a written decision finding that Plaintiff was not disabled from June 20, 2015 through the date of the decision. (PageID.36–46.) Plaintiff filed a request for review, which the Appeals Council denied on August 16, 2019. (PageID.20–24.) Therefore, the ALJ's ruling became the Commissioner's final decision. 20 C.F.R. §§ 416.1455, 416.1481. Plaintiff initiated this civil action for judicial review on October 8, 2019.

## Analysis of the ALJ's Opinion

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her RFC is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

After finding that Plaintiff had not engaged in substantial gainful activity since his amended onset date, the ALJ found that Plaintiff suffered from the following severe impairments: (1) multiple sclerosis; (2) substance abuse; and (3) depression. (PageID.36.) The ALJ determined that Plaintiff's anxiety was non-severe, as Plaintiff had recently reported that he

---

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f).

was "doing okay," and he was not seeing a mental health professional for management of anxiety symptoms. (PageID.37.) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.31–32.) The ALJ considered Listing 11.09 (Multiple Sclerosis) and Listings 12.02–12.08, 12.10, 12.11, 12.13 and 12.15, pertaining to mental disorders. As to the mental disorder listings, the ALJ considered the four broad areas of mental functioning set out in the "paragraph B" criteria, 20 C.F.R. Pt. 404, Subpt. P, App 1, and found that Plaintiff was moderately limited in the areas of understanding, remembering or applying information; interacting with others; and concentrating, persisting, or maintaining pace. The ALJ found that Plaintiff was mildly limited in the area of adapting or managing himself. (PageID.37–38.)

With respect to Plaintiff's RFC, the ALJ determined that Plaintiff retained the capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that he: (1) required a sit/stand option at will; (2) could never crawl or climb ladders, ropes or scaffolds; (3) could occasionally balance, stoop, kneel, crouch and climb ramps or stairs; (4) could frequently handle and finger bilaterally; (4) could have only occasional exposure to non-weather related extremes of heat; and (5) was limited to simple, routine, repetitive work with only occasional interaction with the public, coworkers, and supervisors. (PageID.40.) Citing *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), *Dennard v. Sec'y of Health & Human Services*, 907 F.2d 598 (6th Cir. 1990), and Acquiescence Ruling 98-4(6), the ALJ found "no new and material evidence . . . pertaining to the period of adjudication that would provide a basis for finding a different" RFC than the prior ALJ had found in his June 19, 2015 decision. (PageID.43–44.)

At step four, the ALJ determined, consistent with the prior ALJ finding, that Plaintiff could not perform his past relevant work as an auto mechanic. (PageID.44.) At the fifth step, the ALJ determined that a person of Plaintiff's age, education, work experience, and his RFC could perform the jobs of packer, sorter, and office clerk, 121,000 of which exist in the national economy. (PageID.44–45.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

## Discussion

Plaintiff raises two issues in his appeal: (1) whether the ALJ erred in failing to properly assess his multiple sclerosis under Listing 11.09; and (2) whether substantial evidence supports the ALJ's RFC Determination.

## I. Listing 11.09

Plaintiff argues that the ALJ failed to properly assess whether his multiple sclerosis met or equaled the requirements of Listing 11.09. In his step three analysis, the ALJ said that Plaintiff's multiple sclerosis "fails to meet the listing for 11.09 because the record, consistent with the findings below, does not demonstrate [Plaintiff] has Multiple Sclerosis" that meets Listing 11.09's requirements. (PageID.37.) To the extent Plaintiff suggests that the ALJ was required to provide a detailed analysis at step three as to why Plaintiff's impairment did not meet or equal Listing 11.09, the argument lacks merit. The Sixth Circuit has rejected the notion that "a heightened articulation standard" is required at step three, so long as the ALJ's reasoning is evident from the body of the decision and is supported by substantial evidence. *Bledsoe*, 165 F. App'x 408, 411 (6th Cir. 2006); *see also Werkema v. Comm'r of Soc. Sec.*, No. 1:13-cv-646, 2014 WL 5035363, at *3–4 (W.D. Mich. Sept. 22, 2014) (concluding that the ALJ's statement

that his reasons for finding that the plaintiff did not meet either the "paragraph B" or "paragraph C" criteria would be further explained in his RFC analysis was sufficient to explain his step three findings); *Staggs v. Astrue*, No. 2:09-cv-97, 2011 WL 3444014, at *3 (M.D. Tenn. Aug. 8, 2011) (noting that "the ALJ is under no obligation to spell out 'every consideration that went into the step three determination' or 'the weight he gave each factor in his step three analysis' or to discuss every single impairment") (quoting *Bledsoe*, 165 F. App'x at 411). This is particularly true where, as in this case, Plaintiff, represented by counsel, did not argue before the ALJ or the Appeals Council that his impairments met or medically equaled Listing 11.09 (PageID.51–70, 294–96), and thus did not point to evidence in the record showing that Plaintiff met the listing's requirements. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014).

At step three of the disability evaluation process, the Commissioner must consider whether a claimant's impairments meet or medically equal any of the relevant listing requirements of 20 C.F.R. Part 404, Subpart P, App. 1, 20 C.F.R. § 404.1520(a). An impairment that meets only some of the requirements of a listing does not qualify, despite its severity. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Conversely, a claimant who meets the requirements of a listed impairment will be deemed conclusively disabled and entitled to benefits. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant bears the burden of demonstrating that he meets or equals a listed impairment. *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014).

> A claimant with multiple sclerosis meets this listing if any of the following are present:
>
> A. Disorganization of motor function as described in 11.04B; or
>
> B. Visual or mental impairment as described under the criteria in 2.02, 2.03, 2.04, or 12.02; or
>
> C. Significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting

> from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 11.09.

In his rather terse argument regarding the ALJ's step three analysis, Plaintiff does not specify which part of the listing he contends was satisfied, although his discussion seems to focus on Part C. (ECF No. 10 at PageID.505 (mentioning tremors and documented weakness as well as fatigue with activity).) However, Plaintiff not only fails to cite specific evidence, but does not explain why or how the requirements of Part C are met.

On the other hand, the ALJ's discussion of Plaintiff's multiple sclerosis in his RFC adequately explains his step three determination. Although the ALJ found that Plaintiff's multiple sclerosis was severe, he cited statements and findings by Rany Aburashed, D.O., Plaintiff's primary treating physician for his multiple sclerosis, indicating that Plaintiff's multiple sclerosis was not of such severity that it satisfied a listing or precluded work. For example, the ALJ cited the notes of Plaintiff's most recent visit in May 2018, in which Dr. Aburashed stated that Plaintiff was "currently able to do activities of daily living without limitations." (PageID.41–42, 477.) Dr. Aburashed also stated that "[c]ompared to 6 months ago, patient remains stable and is still able to perform all ADL's without difficulty." (PageID.477.) These observations were consistent over the period of alleged disability. (PageID.311, 315, 387, 432, 469, 473.) Dr. Aburashed also consistently noted that Plaintiff had no clear clinical exacerbations or relapses of his multiple sclerosis since his last visit. (PageID.309, 313, 317, 322, 390, 435, 467.) Dr. Aburashed also consistently reported that Plaintiff had no musculoskeletal weakness or atrophy on his musculoskeletal examination. (PageID.312–13, 316–17, 320–21, 388–89, 433–34, 466–67.) In his notes of his February 21, 2018 visit with Plaintiff, the doctor noted that Plaintiff had only slight worsening in his right upper extremity tremors with occasional signs of unmasking

relating to his previously noted cerebellar lesion. (PageID.434.) And, at his last visit in May 2018, Dr. Aburashed reported that upper and lower extremity examinations showed full muscle strength at 5/5. (PageID.479.) Such findings were consistent throughout claimed period of claimed disability. (PageID.309, 313, 317, 467.)

In sum, the ALJ's discussion was adequate to explain his step three findings, and his determination that Plaintiff does not meet the requirements of Listing 11.09 is supported by substantial evidence. Plaintiff's argument to the contrary does not undermine the ALJ's conclusion, particularly because Plaintiff fails to meet his burden of demonstrating that he meets the requirements of the listing.

Accordingly, Plaintiff is not entitled to relief on this ground.

**II.     The ALJ's RFC Determination**

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination. The Court disagrees.

A claimant's RFC represents the "most [a claimant] can still do despite [his] limitations." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 505 (6th Cir. 2014); *see also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents his ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). In determining a claimant's RFC, the ALJ considers medical source statements and all other evidence of record. 20 C.F.R. § 404.1545(a)(3). After considering the evidence of record, the ALJ concluded that Plaintiff could perform sedentary work with a sit/stand option at will. (PageID.40.)

9

A.     **Medical Evidence**

An August 2016 MRI report stated that Plaintiff's multiple sclerosis brain lesions followed a "[s]imilar pattern to 2015." (PageID.353.) On September 7, 2016, Dr. Aburashed noted that the most recent MRI of Plaintiff's brain "showed stable T2 hyperintense changes with no evidence of radiologic progression." (PageID.322.) In May 2018, at Plaintiff's last visit before the ALJ hearing, Dr. Aburashed noted that Plaintiff's most recent MRI from March 2018 showed "extensive but stable T2 hyperintense lesions in the supra and infratentorial territories," and his multiple sclerosis "remained stable." (PageID.479–80.) Rechecks of Plaintiff's multiple sclerosis in April 2017, August 2017, and February 2018 confirmed that Plaintiff's multiple sclerosis had been stable throughout the alleged period of disability. (PageID.432–35, 465–72.) Dr. Aburashed repeatedly stated that Plaintiff was "currently able to do activities of daily living without limitations." (PageID.41–42, 477.) Plaintiff's primary care physician, Michelle LeMieux, D.O., treated Plaintiff's depression, which was managed with medication. (PageID.440, 444.)

Plaintiff complains that the record does not include MRIs from the period relating to the prior benefit determination, and he argues that the term "stable" does not denote a level of severity. (ECF No. 10 at PageID.500.) However, the ALJ clearly states that the most recent findings were consistent with the medical record, which demonstrated that Plaintiff had not had any exacerbations or relapses of his multiple sclerosis during the alleged period of disability. (PageID.42.) Moreover, Dr. Aburashed's repeated statements that Plaintiff was "currently able to do activities of daily living without limitations" refuted any claim that that Plaintiff's multiple sclerosis precluded all work. (PageID.41–42.)

### B.     Plaintiff's Subjective Allegations

The ALJ also considered Plaintiff's subjective allegations regarding his symptoms, including his testimony at the hearing, but found that they were "not entirely consistent with the medical evidence and other evidence in the record." (PageID.41.) That evidence showed that Plaintiff's multiple sclerosis remained stable, that Plaintiff's depression was well managed with medication, and that Plaintiff was able to perform activities of daily living without limitation. Nonetheless, the ALJ accepted Plaintiff's testimony, to the extent was consistent with the record, and included specific limitations in his RFC finding to accommodate those limitations. (PageID.43.)

### C.     Opinion Evidence

Plaintiff's chief complaint is that the ALJ erred in assessing the opinion evidence by assigning great weight to the opinion of a State Agency examiner and failing to give controlling weight to the opinions of his treating physicians.

#### 1.     Joe DeLoach, Ph.D.

The ALJ gave Dr. DeLoach's opinion great weight, explaining:

> Dr. Deloach's review of the evidence is accurate and consistent, and Dr. DeLoach correctly identifies that claimant has no clear clinical exacerbations of [sic] relapses of his multiple sclerosis and that his depression is manageable with medication. (EX 4A/5). Moreover, Dr. DeLoach opined that claimant retained the capacity to perform simple and repetitive tasks on a sustained basis (Ex. 3A/5). These proposed limitations are consistent with the B criteria assigned herein.

(PageID.42.) State-agency reviewers are highly qualified physicians and psychologists who are experts in the evaluation of Social Security disability claims. *See* 20 C.F.R. §§ 404.1513a(b)(1), 20 C.F.R. § 416.913a(b)(1); SSR-96-6p, 1996 WL 1374180, at *2 (July 2, 1996) (administrative law judges are required to consider state agency medical and psychological "findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining

11

physicians and psychologists. Administrative law judges and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight give to the opinions in their decisions"). When a State Agency opinion is consistent with the record, the opinion represents substantial evidence to support the ALJ's opinion. *See Atterbery v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 570 (6th Cir. 1989).

Plaintiff argues that the ALJ erred in adopting Dr. DeLoach's opinion because Dr. DeLoach is a Ph.D., not a physician, and thus is not qualified to opine about Plaintiff's physical capacities or diagnosis. Plaintiff is correct that, as a psychologist, Dr. Deloach was not qualified to opinion on Plaintiff's physical capabilities. *See Buxton v. Halter*, 246 F.3d 762, (6th Cir. 2001). But it is not clear that Dr. DeLoach rendered a medical opinion, as he opined that Plaintiff's depression was manageable with medication and that Plaintiff retained the capacity to perform simple and repetitive tasks on a sustained basis. (PageID.42.) Certainly, these opinions were not beyond Dr. DeLoach's expertise. In any event, even if the ALJ went too far in crediting Dr. DeLoach's entire opinion, he did not err in adopting Dr. DeLoach's opinions regarding Plaintiff's mental limitations.

### 2. Dr. Aburashed

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). That

deference is appropriate, however, only where the opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citation omitted). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286-87 (6th Cir. 1994).

The ALJ assigned little weight to Dr. Aburashed's opinion that Plaintiff was unable to maintain meaningful employment given his multiple sclerosis and due to his difficulty ambulating and his anxiety. The ALJ explained:

> This opinion is inconsistent with the medical evidence of record generally and particularly inconsistent with Dr. Aburashed's other multiple opinions in the record, both before and after this opinion, that claimant is "currently able to do activities of daily living without limitations," (Ex. 2F/4, 8, 12, 16; 16F/2, 6, 10, 14), to which I assign great weight. Moreover, Dr. Aburashed's opinion that claimant is unable to maintain employment is an opinion on an issue reserved to the Commissioner. The opinion of claimant's physicians on the issue of disability is not binding on the Administration because such an opinion involves non-medical issues. Accordingly, per SSR 96-8p, these opinions are not controlling with regard to claimant' residual functional capacity.

(PageID.42–43.)

The ALJ properly weighed Dr. Aburashed's opinions and articulated valid reasons, supported by substantial evidence the record, for not giving them controlling weight. That is, the ALJ found that Dr. Aburashed's opinions were inconsistent with the medical record in general and in particular with Dr. Aburashed's own treatment notes.[2] This was an adequate explanation, and the ALJ was not required to explain how he evaluated each factor in the regulations. *See* 20 C.F.R. § 404.1527(c); *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 786 (6th Cir. 2017).

---

[2] On at least two occasions, Dr. Aburashed encouraged Plaintiff to seek employment as a means of improving his mood. (PageID.468, 472.)

Moreover, the issue of disability is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1), (2).

### 3. Dr. LeMieux

The ALJ assigned Dr. LeMieux's opinions little weight:

> Specifically, Dr. MeMieux's [sic] opinions that claimant should never walk, should sit only one hour without interruption, and should stand only half an hour without interruption (Ex. 15F/3), and that claimant is unable to sit, stand, or walk for extended periods of time (Ex. 13F/1), are inconsistent with the medical record, especially where claimant himself testified at the hearing that he mows the lawn and vacuums the house. Dr. LeMieux's opinions that claimant is unable to perform his previous job functions (Ex. 15F/5) is an opinion on an issue reserved to the Commissioner, and is therefore disregarded.

(PageID.43.) The ALJ properly weighed Dr. LeMieux's opinions and expressed that he was assigning them little weight as they were inconsistent not only with the medical record as a whole, but also with Plaintiff's self-reported activities. This was a sufficient explanation of the weight the ALJ afforded Dr. LeMieux's opinions. *See Rottmann v. Comm'r of Soc. Sec.*, 817 F. App'x 192, 195 (6th Cir. 2020) ("While the ALJ did not reference each factor, he did discuss the factor most important to this case, *i.e.*, the consistency (or lack thereof) of the doctors' opinions with the record as a whole. As noted, Rottman's self-reported activities (and other parts of the record) were markedly inconsistent with the doctor's opinions."). In fact, Dr. LeMieux's opinions were at odds with her own generally normal examination findings. (PageID.442, 446, 450, 455.) *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514–15 (6th Cir. 2010) (upholding the ALJ's decision to give no weight to a nontreating source opinion because the opinion was inconsistent both with the source's own findings as well as the overall record).

### 4. Plaintiff's Mother

Plaintiff also argues that the ALJ improperly rejected the opinions of Plaintiff's mother, Susan Smith, in a third-party function report. This opinion qualified as an "other source" third-

party statement. *See* SSR 06-03p, 2006 WL 2329939, at *2, 6 (Aug. 9, 2006); 20 C.F.R. § 404.1513(a) (providing that other sources may provide information about any issue involved in the claim). In evaluating "other source" opinions, an ALJ should consider various factors, "including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (citation omitted).

The ALJ properly considered Ms. Smith's opinion and adequately explained his reasons for assigning it little weight. Although the ALJ noted that Ms. Smith's opinion was consistent with Plaintiff's reported limitations, he found it at odds with the treatment notes in the record, "especially where those records state that claimant is able to do activities of daily living without limitations." (PageID.43.) Here, the ALJ discussed Ms. Smith's opinion and gave adequate reasons for assigning it limited weight. *See Cahill v. Comm'r of Soc. Sec.*, No. 11 CV 2207, 2013 WL 331228, at *24 (N.D. Ohio Jan. 8, 2013), report and recommendation adopted 2013 WL 331115 (N.D. Ohio Jan. 25, 2013) (noting that "the ALJ did not err by failing to discuss and explain the weight he assigned the third party reports, which largely echoed Plaintiff's own reports and were largely inconsistent with the medical evidence and Plaintiff's daily activities").

The ALJ is tasked with determining a claimant's RFC. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c). While the ALJ may not "play doctor" and substitute his own opinion for that of a medical professional, the ALJ is not required to tailor his RFC assessment to any particular opinion or item of medical evidence. *See, e.g., Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. Aug. 18, 2009). Instead, the ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of h[is] residual functional capacity." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). This is

precisely what the ALJ did in this case, and the ALJ's RFC assessment is supported by substantial evidence. Plaintiff's argument is essentially that this Court should re-weigh the evidence and reach a different conclusion, which it is not permitted to do. Accordingly, this argument is rejected.

## Conclusion

For the reasons stated above, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

An order consistent with this opinion will enter.


Dated: December 15, 2020                /s/ Sally J. Berens
                                        SALLY J. BERENS
                                        U.S. Magistrate Judge